## H. M. SULLIVAN v. BOARD OF SUPERVISORS OF LAFAYETTE COUNTY.

1. BOARD OF SUPERVISORS. *Proceedings before. Motion to set aside verdict. Proof of causes assigned.*

    In proceeding before a board of supervisors to condemn land to public use, some proof of the causes assigned in a motion to set aside a verdict assessing the value of the land should be demanded by the board, and a cause will be remanded for that purpose on appeal. But for failure to demand such proof this court will not set aside one verdict against a party and re-establish a former one in his favor.

2 SAME. *Assertions of counsel*

    Assertions of counsel that the causes assigned in a motion to set aside a verdict, made in argument before the board, in the presence of the opposite party, are not proof, and the opposite party is not called upon to deny them until evidence of their truth has been adduced.

3. SAME. *Proceedings before. How tested on appeal.*

    Proceedings before boards of supervisors, though in many respects they must conform to those before other judicial tribunals, should not be tested by standards too high. They are legislative as well as judicial bodies, and in constant danger of blending their dual functions.

4. SAME. *Verdict. Approval by the board.*

    A verdict in proceedings before boards of supervisors is not complete until approved by the board.

5. HIGHWAY. *Damages for appropriations of land to public use. How measured.*

    A party whose lands are appropriated for a public highway is entitled to his own losses and not to what the county gains. The measure of his damage is the difference of value of his land before and after appropriation, charging nothing against him by reason of enhanced value of land arising from erections thereon.

APPEAL from the Circuit Court of Lafayette County.

HON. W. S. FEATHERSTON, Judge.

This case was before this court at a former term and will be found reported in 58 Miss. 790. The facts presented by the record now are substantially the same as on the former trial.

A commission appointed by the Board of Supervisors of Lafayette County, upon a petition of citizens of that county, to select a

site for the erection of a free public bridge over the Tallahatchie River, selected a place where a public ferry was kept, known as Toby-Tuby Ferry, at which the river intersected a public highway. On the 8th of September, 1879, the board contracted for the erection of the bridge at the place selected, the work to be done by the 22d of December, 1879.   On the 8th of October, 1879, H. M. Sullivan presented a petition to the board, alleging that he was the owner of the ferry, its landings and appurtenances, and was operating the ferry under a license from the board, greatly to his profit, and asking for a jury to assess the damages that would result to him from the erection of the bridge.   As the bridge was actually located, its abutments rested partly upon the public highway and partly upon the adjoining land, and the board appointed commissioners to lay out a new road to correspond with the bridge.   This report was received on the 1st of December, 1879, and on the 22d of that month Sullivan presented another petition, alleging that he was the owner of the land on both sides of the ferry and that upon which the proposed new public road was to be located, and claiming damages resulting from the appropriation of his property and from the construction of the road.   On the 23d of December, 1879, the board ordered that a jury be summoned to assess the damages sustained by Sullivan by reason of the change in the public road, and on the 3d of January, 1880, the jury rendered a verdict assessing Sullivan's damages at two thousand seven hundred and fifty dollars.   On the 4th of March, this verdict was set aside, and the petition dismissed.   On the 20th of July, 1880, Sullivan obtained an injunction prohibiting work on the bridge or road. On the 26th of July, 1880, Sullivan was notified that certain citizens of the county would, on a day named, present a petition to the board of supervisors, praying to have a public road opened across his land, to the bridge, and that if he had any objection he should be present on that day and urge the same.   Sullivan failed to appear or make any objection in response to this notice, and commissioners were appointed to lay out the road.   On the 16th of August, 1880, they reported their action in laying out the road, and on the same day Sullivan filed written objections to

the report on the grounds, (1) that there was no public necessity for the road, and (2) that the proceeding was in violation of the injunction pending; and he demanded that, if the report be confirmed, he should be paid for the public appropriation of the bridge, which he claimed as his property, for the destruction of his ferry, and for the appropriation of his land for the road and bridge. The objections were overruled and the report confirmed, and a jury ordered "to assess the damages to the land over which the road is laid out, and determine what is just compensation to said Sullivan, for the land taken for the public road." Under this order the jury rendered a verdict for Sullivan for twenty dollars and fifty-four cents for one and one-fifth acres of land. To this verdict Sullivan filed objections, embracing those above stated and the further ones, (1) that the order of the board restricted the jury to a new valuation of the land taken, excluding other damages; (2) that the value of the bridge was not assessed; (3) that the damage inflicted by taking the ferry was not assessed, and (4) that the effect of the proceeding was to take for public use Sullivan's ferry and ferry franchise. These objections were overruled, and Sullivan appealed to the circuit court, which affirmed the action of the board of supervisors. He then appealed to this court, which reversed the judgment of the circuit court and remanded the cause to the Board of Supervisors of Lafayette County to be further proceeded with on the petition of Sullivan for damages, in accordance with the opinion in 58 Miss. 790.

In pursuance to these directions, after the cause was remanded, a jury was summoned which assessed Sullivan's damages and compensation at one thousand seven hundred and fifty dollars. The attorney for the county made a motion to set aside this verdict, alleging many irregularities and unauthorized influences which had produced this verdict. There was no proof offered in support of the allegations of the motion. But the counsel for the county, not under oath, stated in his oral argument before the board, in support of the motion, that he knew the facts therein set forth to be true, and challenged counsel for Sullivan to disprove them, which he did not attempt to do. The motion was sustained and the verdict set

18

aside. This action of the board is assigned for error. Another jury was summoned and directed as follows: " To view the premises and inquire of and determine the compensation and damages that H. M. Sullivan is entitled to for his land taken on both sides of the Tallahatchie River, including the land upon which said free bridge rests, and for his damages sustained by the construction of said road, and said jury are directed in estimating said damages and compensation not to consider the value of said bridge nor the value of the ferry heretofore run by said Sullivan near said bridge, nor how much the ground upon which this said bridge was erected was worth as a site for a bridge over and above any other site on said river. But the jury will consider the compensation and damages that said Sullivan is entitled to for his land taken for said road and bridge, and his damages sustained by the construction of said road exclusive of the value of the ferry and of said free bridge," etc. The jury, under these directions, found, on the 21st of October, 1882, a verdict for one hundred dollars, which Sullivan moved the board to set aside and to order a new jury, upon the following grounds:

1. Because the precept issued by the board and under which said jury was impaneled contains instructions to the jury and restrictions on their powers erroneous and unlawful and prejudicial to claimant's cause.

2. Because before said jury claimant offered to prove that the Toby-Tuby Ferry was and is the property of claimant and that the building of the bridge extinguished and ruined the ferry, and to prove the value of the ferry.

3. Because before said jury claimant offered to prove that the bridge was built on complainant's premises without lawful authority, and that the board in so building it acted in disregard of and over the prohibition of claimant made to them collectively at several of their meetings, and to the individual members before the bridge was built and before they had paid out one dollar on the bridge, and he offered to prove the value of the bridge as a part of his damages.

4. Because before said jury claimant offered to prove that the

land appropriated for the bridge site was, as a bridge site, worth two thousand five hundred to three thousand dollars, and the said jury, acting under the stress of the instructions and restrictions in said precept contained, refused to hear any evidence on any of said points.

5. Because the verdict of the jury is on its face confined to the damages to the land actually taken, and does not assess the damages suffered by claimant or by his premises *in toto*, looking to the use to which the land taken is to be put.

The board, after hearing testimony, overruled the motion and confirmed the verdict. The cause was appealed to the circuit court, which affirmed the judgment of the board, and the cause is now here on appeal from said last judgment.

*Lamar, Mayes,* and *Branham,* for the appellant.

*The precept issued by the board, and under which said jury was impaneled, contained instructions to the jury and restrictions on their powers erroneous and unlawful and prejudicial to claimant's cause.* In going upon his land, taking possession of the same, and building a bridge thereon, without previous condemnation of the road and at least a tender of compensation therefor, the board were trespassers. See *Memphis, etc., R. R. Co.* v. *Payne,* 37 Miss. 700; *Stockett* v. *Nicholson,* Walker 75; Code 1871, § 2341; and the property so lawlessly placed became fixed to the freehold and passed to the owner of it. In the case of *Graham* v. *Connersville, etc., R. R. Co.,* 36 Ind. 463, the precise question was passed on. To the same effect precisely are *United States* v. *Tract of Land,* 47 Cal. 515; *Matter of Long Island R. R. Co.,* 6 N. Y. Sup. Ct. 298; *Hampden Paint, etc., Co.* v. *Springfield, etc., R. R. Co.,* 124 Mass. 118; *Van Size* v. *Long Island R. R. Co.,* 3 Hun 613; and see the able note in the November number, 1879, of the Am. Law Reg., appended to the case of *Greve* v. *St. Paul, etc., R. R. Co.,* reported therein. We maintain, further, that even if the jury should not have estimated the value of the bridge or of the ferry, yet they should have estimated the value as a bridge site of the land taken. This peculiar value was a proper subject for consideration by the jury. *Brisbine* v. *St. Paul, etc., R. R. Co.,* 23 Minn. 14; *Young* v. *Harrison,* 17 Ga. 30.

*H. M. Sullivan,* on same side.

This judgment must be reversed and the cause remanded, because:

1. The board of supervisors instructed the jury. This was an invasion of the judicial department.

2. The instructions excluded the jury from considering damages sustained by the use to which the land taken is put, and this excluded damages for taking the bridge site.

3. The board of supervisors disobeyed the mandate of this court in this case by not issuing the precept to the jury in the language of the statute, § 2339, but excluded the jury from considering the value of the bridge site, the ferry, the bridge levee, etc., and the use to which the land is put.

4. The verdict of the jury shows that they considered only "the damages to the land taken," and not "damages sustained by petitioner by the subtraction from his estate of the land condemned and *by the use to which it is put,*" as the mandate required.

5. The jury refused to hear proper evidence and undertook to pass upon the admissibility of evidence.

6. Because the verdict of one thousand seven hundred and fifty dollars' damages was set aside at an adjourned meeting; hence, that being a nullity, that verdict is still pending and undisposed of and proceedings since are all void.

7. The proceedings after the return of the two thousand seven hundred and fifty dollars' verdict to the January term, 1880, of the board are void, and this court should affirm that verdict and set aside all subsequent proceedings.

8. The value of the ferry should have been considered; the jury should have heard evidence of title (Indian title or legislative grant) or else estimated value and left question of title to the courts.

9. The value of the bridge should have been considered; it is appellant's and he is not estopped to claim it.

10. The verdict and judgment are neither according to law nor is it equitable; it is not "*just compensation.*" 58 Miss. 803; *Isom v. M. C. R. R. Co.,* 36 Miss. 315; Mills on Eminent Domain, § 162; 23 Minn. 14; 25 Mo. 258; 6 Rich. L. 47; 58 Miss. 803;

*Young* v. *Harrison,* 17 Ga. 30; Ib., 9 Ga. 359; 36 Miss. 301; 34 Miss. 227; 31 Miss. 240; 39 Miss. 385; *Penrice* v. *Wallis,* 8 Geo. 183; Ib. 700; Mills on Eminent Domain, § 255; *Paul* v. *Detroit,* 32 Mich. 108; Mills on Eminent Domain; 26 Gratt. 661; 39 N. H. 254; 32 Mich. 108; *Central Pacific R. R.* v. *Pearson,* 35 Cal. 247; *Davidson* v. *Boston R. R.,* 3 Cush. 91; *Merrill* v. *Berkshire,* 11 Pick. 269; *Fitchbury R. R.* v. *Boston R. R.,* 3 Cush. 58; Mills on Eminent Domain, § 257; 7 Iowa 72.

11. There was no jurisdiction in the supervisor's court to alter or change the road or to order a new one laid out, because there was no *petition,* signed by ten or more taxpayers, citizens, or freeholders (or anybody else) of said county filed praying for a new or altered or changed road, and no *notice* given to the owner, Sullivan, of the land where the changed road proposed to run. Code 1871, § 2336; Mills on Eminent Domain, § 171; 54 Mo. 234; 5 Neb. 252; 7 Neb. 28; 20 Ind. 270; 18 Kan. 129; Ib. 386. The public may have notice and object to the petition of a few and its expense. 42 Conn. 321.

12. And the finding of a jury that the taking is necessary for public use cannot be dispensed with. 25 Mich. 139; 27 Barb. 94; 20 Mich. 57; Ib. 29; Mills on Eminent Domain, § 275.

13. And the description of the land proposed to be taken for a public road should be sufficiently distinct to ascertain the termini and general course. Mills on Eminent Domain, §§ 287–8–9, and § 280.

14. In altering a road there cannot be such a deviation as to cross other land or to make a way which would actually be a new line of way. Mills on Eminent Domain, § 282; 3 Metc. 375; 11 Pick. 269.

15. The road must be laid out as petitioned for. Mills on Eminent Domain, § 283.

16. The road must be built as laid out. Mills on Eminent Domain, § 284. All these things were omitted until after the injunction served. If the statutory remedy is not strictly followed the condemning party obtains no title or easement, and cannot even defend the usual common law actions. 118 Mass. 138; 5 Wall. 413; 84 Ills. 135. An entry before payment is

a trespass and will furnish the owner sufficient grounds to maintain trespass, ejectment, or to maintain injunction, and there is *no obligation on the owner to institute such proceedings.* 20 Wis. 135; 30 Ib. 105; 17 Ib. 504; 5 Cow. 165; 50 N. H. 591; 41 Iowa 52; 35 Ib. 129; 47 Ga. 565. Appellant is therefore not estopped by not taking such remedies. " In most States the title does not pass until compensation made, and an entry made before that time is a trespass. A trespasser is not entitled to any improvements made on the land during the time of his occupation. All erections belong to the owner and cannot be removed by the party placing them there; hence, upon a subsequent condemnation the value of the land, with the structures also, must be paid." Mills on Eminent Domain, § 148; 6 N. Y. Sup. Ct. 298; 36 Ind. 463; 39 Ia. 340; 47 Cal. 515. And Mississippi is one of those States. 34 Miss. 227; 36 Miss. 311; 37 Miss. 173; Ib. 700; 39 Miss. 385.

*W. L. Nugent,* on same side, made an oral argument.

*Charles B. Howry,* for the appellee.

The appeal in this case is practically a petition for a re-argument of the questions finally and definitely settled by this court in the case of *Sullivan* v. *Board of Supervisors,* 58 Miss. 796 *et sequitur.* The verdict for one hundred dollars is right and proper and liberal so far as Sullivan is concerned, and if any one has cause of complaint the county has. As the county does not complain and the evidence will justify the verdict, it will be sustained. *Routh* v. *Agricultural Bank,* 12 S. & M. 161; *Cogan* v. *Frisby,* 36 Miss. 178; *Kelly* v. *Miller,* 39 Miss. 17. Even if the instructions were erroneous this would not cause a reversal if without the circumstances to which they are directed the verdict is manifestly right on the other facts, which of themselves make out the case. *Craft* v. *Bloom,* 59 Miss. 69; *Rothchild* v. *Batch,* 54 Miss. 554; *O'Leany* v. *Burns,* 53 Miss. 171; *Garrard* v. *The State,* 50 Miss. 148; *Dulaney* v. *Rankin,* 47 Miss. 391; *New Orleans R. R. Co.* v. *Burke,* 53 Miss. 201; *Wilson* v. *Kolheim,* 46 Miss. 346; *Tush-ho-yo-tubby* v. *Bar,* 45 Miss. 189; *Haber* v. *Lane,* 45 Miss. 189, 608. The claim to the ferry franchise, so called, is *res adjudicata* if any-

thing is. The whole question of superseding the ferry altogether is set at rest in the decision in 58 Miss. 796. Proof was made to the board in the presence of Sullivan's counsel that the grounds alleged in the motion to set aside this return were true and no proof was offered that the facts disclosed by the motion were not true. If the matters contained in the motion were true the verdict was flagrantly wrong and there was no escape from the conclusion. The bill of exceptions could avail nothing after acquiescence to the order of the board. *Jackson* v. *The State,* 55 Miss. 532; *Peebles* v. *The State,* 55 Miss. 436; *Neel* v. *Allison,* 50 Miss. 175; *Moore* v. *Ernest,* 54 Miss. 644. The question of compensation: The Supreme Court of the United States, in referring to the taking of private property for public use, has said that compensation was meant only for direct appropriation and not for consequential injuries. *The Legal Tender Cases,* 12 Wall. 457. Section 2339, Code 1871, provides the proceedings for "due compensation," and it would be a novel construction of that statute to deny the public the right to build its bridge at points where the work can be done cheapest, without paying the owner of the land the difference between the cost of the bridge there and some other point when the intrinsic value of the land is as nothing to the owner. "Just compensation," as used in the Constitution of the United States, means a compensation just in regard to the public as well as to the individual. *Ches. and O. Canal Co.* v. *Key,* 3 Cranch C. C. 599. Speculative profits to be made out by calculation on paper are not allowable, but must be reasonably certain. *V. and M. R. R.* v. *Ragsdale,* 46 Miss. 458.

*Charles B. Howry* also made an oral argument.

*H. A. Barr,* on the same side.

The bill of exceptions shows that Mr. Howry stated to the board that the *assertions* of fact set forth in the motion as grounds for setting aside the verdicts were true and that no one contradicted his statement, and that the board set aside the verdict without any further testimony. That the statement of Mr. Howry was made and *regarded* as testimony is admitted by the statement that there was "*no further testimony.*" If there was any objection to the tes-

timony of Mr. Howry it was waived by appellant. He neither *excepted* nor objected to it nor offered to contradict it. *Storm* v. *Green,* 51 Miss. 107. If there were irregularities in setting aside this verdict specific objections ought to have been interposed at the time. Objections not made before the board cannot now be made in this court. A party cannot sit silent and then come to this court and claim that he was damnified by an action to which he did not object. *Sullivan* v. *Board of Supervisors,* 58 Miss. 803; *Peebles* v. *The State,* 55 Miss. 435; *Neal* v. *Allison,* 50 Miss. 175; *Moore* v. *Ernet,* 54 Miss. 644; *Jackson* v. *The State,* 65 Miss. 532. It has been settled by this court that appellant was not the owner of the ferry by prescription; that he was a mere licensee; that his license was revocable when the interest of the public required it; that there was no contract between the public and the licensee, and that he had no property in the right. *Sullivan* v. *Board of Supervisors,* 58 Miss. 796. The instruction did not preclude the jury, nor did it tend to preclude the jury, from giving Sullivan the fullest compensation for his land and for damages sustained by him by the construction of the road and the bridge. The cash value of his land and the actual damages to his adjacent land were the true standard by which to determine his compensation. *Brown* v. *Beatty,* 34 Miss. 242; *Isom* v. *Miss. Cen. R. R. Co.,* 36 Miss. 300. There is no authority in the statute by which the jury could have looked to or examined or valued other lands; for the valuation of Sullivan's land was the thing, and the only thing, that the jury were authorized to do. And the only test of the value of his land was the market value—that is, its value as between one who wants to purchase and one who wants to sell. 3 Sutherland on Damages 462.

CHALMERS, J., delivered the opinion of the court.

When this case was heretofore in this court we decided that no ownership of a public ferry could exist in this State save by legislative grant, and that in this particular case the appellant was by his conduct estopped to claim ownership of the free bridge erected on his land. Of the correctness of the conclusions reached, both as

to the question of fact and of law, we remain entirely satisfied, nor was any substantial change in the aspect of the question of fact made by the newly offered testimony upon the subsequent trial in the court below. After the case was remanded to the lower court, a jury of review appointed by the court returned a verdict assessing Mr. Sullivan's damages at one thousand seven hundred and fifty dollars, which was by the board of supervisors set aside. The causes assigned in the motion made for setting aside the verdict were sufficient if they had been supported by proof, but none was offered, the board seeming to have received as proof the assurances of the counsel making the motion that the facts alleged in it were true within his own knowledge, and the failure of appellant's counsel to deny their truth, though challenged to do so. These assertions were made in oral argument, and not under oath, and appellant, in whose favor the verdict had been rendered, was not called upon to deny them until some evidence had been adduced of their truth. Appellant insists that on account of this error we are bound, not only to reverse the verdict against him, rendered by a subsequent jury, but also to re-establish the former verdict in his favor. We do not think so. Proceedings before boards of supervisors, though in many respects they must conform to those before other judicial tribunals, should not be tested by standards too rigid. These boards are legislative as well as judicial bodies, and, consequently, are in constant danger of blending the respective methods of their dual functions. The written motion in this case set forth that the verdict was grossly excessive, a result which had been produced, as alleged, by the introduction of improper and illegal testimony, and by arguments addressed to the jury in the absence of any court, which were wholly improper, and which invited the jury to disregard the former decision of this court, defining the rights of the parties, and indicating the measure of damages to which appellant was entitled. These things occurred (if at all) before a jury in the woods, in the presence of no officer save the sheriff, who was without judicial functions. Appellant was challenged to deny these facts, but remained silent; and while we think that the board should have

demanded some proof of them, we think that justice will be accomplished by now affording opportunity to investigate them ; and for this purpose we remand the case, in order that the board may fully investigate the question whether that verdict was really excessive or not.    In other courts a verdict is complete in itself, and a judgment follows as a matter of law, but a verdict in proceedings before boards of supervisors is not complete until approved by the board. In estimating the damages to which appellant is legally entitled, we desire to add one thing only to what was said in the former opinion in this case.    Sullivan adduced proof that by reason of the conformation of his own lands and of the banks of the river for many miles up and down the stream, it would cost the county two thousand five hundred or three thousand dollars less to build the bridge on his land than at any other point, and claims that he is entitled to have this fact taken in consideration by the jury in estimating his damages.    This claim is not maintainable.  He is entitled to his own losses—not to the county's gains.  He obtains everything he is entitled to when he is made whole, and has no concern with the question of how much the county has gained.    The measure of his damages is filled when he gets the difference between the value of his property before the appropriation and after the appropriation—charging, however, nothing against him by reason of the enhanced value of his land arising from the erection made.    A man who owns a narrow pass between two mountains cannot estimate his damage when it is taken for a road by the cost of tunneling one of the mountains or of surmounting the other.    He is entitled to the actual value of the pass to him for any purpose to which it may or can be applied by him, or is worth in the market for any purpose, and to all damages occurring to his surrounding lands by the construction of the road, and to nothing more.    How much it may be worth to the public to build the road  there is a question with which he has nothing to do.    In the present case Sullivan is entitled to the value of his land taken, in so far as it has a value for any use or purpose to which he can apply or sell it, and to the damage to the balance of his land by reason of the taking, and to no more.    This was sub-

stantially the instructions given to the jury last appointed, and there was no error in so instructing them. *Boom Co.* v. *Patterson,* 98 U. S. 403 ; *Virginia R. R.* v. *Elliott,* 5 Nevada 358 ; *Black River R. R. Co.* v. *Barnard,* 16 Sup. Ct. R. (9 Hun.) 104.

*Reversed and remanded with instructions to the board of supervisors to determine, after proof taken on the basis indicated, whether the verdict for one thousand seven hundred and fifty dollars was excessive, and if the same is set aside, to appoint a new jury with proper instructions.*