CASE 69.—CONDEMNATION PROCEEDINGS BY THE CALOR OIL & GAS CO. AGAINST NICHOLAS FRANZELL, THE KENTUCKY HEATING CO., AND OTHERS.— March 26.

## Calor Oil & Gas Co. v. Franzell, &c.
## Ky. Heating Co., &c. v. Calor Oil & Gas Co.

Appeal from Meade Circuit Court.

WEED S. CHELF, Circuit Judge.

From a judgment for Franzell and wife, all parties appeal—Affirmed on appeal of the Kentucky Heating Conmany and reversed on the appeal of the Calor Oil & Gas Company.

1. Eminent Domain—Proceedings to Assess Compensation—Appeal—Trial De Novo.—The circuit court, on reversal of a judgment of the county court in condemnation proceedings,

holding that the petitioner had not the power of eminent domain, has power to determine the amount of damages, under Ky. St. 1903, section 839, providing that such appeals shall be tried de novo.

2. Contracts — Validity—Public Policy—Lease — Construction of Gas Lease—Exclusive Right of Way.—A lease granting to a gas company the exclusive right to construct pipe lines across the lessor's land is void as against public policy in so far as it excludes others from crossing the tract.   -

3. Same—Illegality—Effect.—A void contract can give rise to no legal rights.

4. Eminent Domain—Subject of Condemnation—Exclusive Right of Way.—A lease giving an exclusive right to cross lands by pipe lines being against public policy, the holder of the right is not entitled to compensation for the invasion of its exclusive right in condemnation proceedings by another of a similar right of way across the same lands.

5. Same—Loss of Rents.—Nor is the landowner entitled to compensation for loss of rent because of the abandonment by the holder of the exclusive right of the lease under which such right was claimed.

6. Corporations—Corporate Existence—Evidence.—The existence of a corporation is sufficiently established by the introduction of a properly certified copy of its charter and a showing of a compliance with the statutory requirements.

7. Same—Incorporation—Attacking Validity of Incorporation.— The purpose or validity of a corporation after it has been organized as required by law cannot be inquired into collaterally, but only in a proceeding instituted and maintained by the government under which it was organized.

8. Mines and Minerals—Natural Gas—Nature of Property Rights. —An action will lie by the owner of a gas well against the owner of other wells in the same district for illegitimate waste or destruction of the gas, but not for exhaustion resulting from legitimate use or sale of the gas.

9. Proceedings—Pleading—Issues.—The question as to the effect on defendant gas company of the plaintiff piping its gas to a city where defendant was doing business cannot be considered in a condemnation proceeding by plaintiff, another gas company, to secure a right of way across land leased to defendant gas company by others.

10. Same—Constitutionality of Statute.—Ky. St. 1903, section 3766a, giving to owner of gas wells the right of eminent domain for the purpose of piping their products to market, is constitutional.

Calor Oil & Gas Co. v. Franzell, &c.

11. Corporations—Dissolution—Effect of One Stockholder Owning Majority of Stock.—Where one corporation owns a majority or even all of the stock of another corporation, it does not destroy the identity or the charter or corporate rights of the latter.

12. Eminent Domain — Proceedings — Conditions Precedent.—In condemnation proceedings by a gas company to secure a right of way to a city in which the gas is to be sold, it is immaterial that plaintiff had not secured a franchise in the city, or that it sold all its gas to another company.

13. Same—Remedies of Owner—Damages—Excessive Damages.—In condemnation proceedings by a gas company to secure a right of way across defendant's land, it appeared that a railroad right of way ran across the place, and that the pipe was to be laid within such right of way, and the whole property was assessed for taxation at $2,000. Held, that a verdict of $4,000 was excessive.

14. Same—Measure of Damages.—Where plaintiff seeks to lay a pipe line along the right of way of a railroad across defendant's land, the measure of damages is the fair market value of the land, and not what it is worth to the petitioner.

15. Same—"Market Value."—The "market value" of land sought to be condemned is that sum which the owner who desired to sell, but was not compelled so to do, would take for it in its present condition, and what a purchaser who desired to buy, but was not compelled to have it, would give for it under the circumstances.

MATT O'DOHERTY for appellant Kentucky Heating Co. and Franzell.

McQUOWN & BROWN, J. W. LEWIS AND J. M. RICHARDSON of counsel.

Note by Reporter:—There is no brief in the record for said appellants, and the following is taken from its petition for rehearing.

Our contention in this case is:

1. That the Calor Oil & Gas Company is not a corporation, defacto or dejure.

2. That whether the Calor Oil & Gas Company has or has not a valid corporate existence, it is not, and the Louisville Gas Company is the real party in interest in this proceeding, and since the only authority for the proceeding is found in the Act

of March 20, 1900 (Section 3766 A. Kentucky Statutes), it should be dismissed because the Louisville Gas Company, it is conceded, could not maintain it, never having accepted the provision of the present Constitution of the State (Constitution, section 190), and the court could not permit it, acting through its dummy, to evade a provision of the fundamental law.

3. That the statute under which the proceedings were instituted (section 3766 A. Kentucky Statutes) is unconstitutional, in that it purports to authorize the taking of private property for other than public use, and so is in violation of the Constitution of this State, and of the Fourteenth Amendment to the Constitution of the United States.

4. That the taking of private property without the consent of the owner for other than public use by condemnation proceedings, or otherwise, is a violation of Fourteenth Amendment to the Constitution of the United States, is not open to dispute. (Fallbrook Irrigating District v. Bradley, 164 U. S., 161; See also Missouri P. R. R. Co. v. Nebraska, 164 U. S., 403; Madison Traction Co. v. St. Bernard Mining Co., 196 U. S., 239; Clark v. Nash, 198 U. S., 361; Lewis on Eminent Domain, 206 "A.")

L. A. FAUREST, J. S. WORTHAM and HUMPHREY & HUMPHREY for appellant Calor Oil & Gas Co.

QUESTIONS DISCUSSED AND AUTHORITIES CITED.

1. Appellant has the right to condemn this land. (Kentucky Statutes, 3766-A.)

2. The introduction of appellant's articles and amended articles of incorporation, and proof of the payment of the organization tax to the State, established its corporate existence. (Kentucky Statutes, 540, 542.)

3. Appellee can not in this proceeding attack the validity of the incorporation of appellant, which is regular on its face. (Cook on Corporations, vol. 2, secs. 492-6; 2 Kent's Comm., p. 312; 1 Lawson on Rights, Remedies, and Practice, 370; Wright v. Shelby R. R. Co., 16 B. Mon., 5; Cumberland Telephone and Telegraph Co. v. Louisville Home Telephone Co., 114 Ky., 892; Harrison v. L. & F. R. R. Co., 9 B Mon., 470; F. F. T. R. Co. v. Jewell, 8 B. Mon., 140; Bank\v. Trimble, 6 B. Mon., 601; Gill's Admx. v. K. & C. G. & S. M. Co., 7 Bush, 639; Turnpike Co. v. Bobb, 88 Ky., 226; Laflin & Rand Powder Co. v. Sinsheimer 46 Md., 315, 24 A. R., 522; Central of Georgia R. Co. v. U. S. & N. R. Co. (Nov. 22, 1905), 39 So. 473, 2 L. R. A., (N. S.) 144; Postal Tel. Cable Co. v. O. S. L. R. Co., 23 Utah, 474; 65 Pac. Rep.,

735; U. P. R. Co. v. C. P. T. C. Co., 30 Colo. 133; 69 Pac. Rep., 564; Briggs v. Cape Cod S. C. Co., 137 Mass., 71; Brown v. Calumet River Co., 125 Ill., 600; Spring Valley Water Works v. San Francisco Co., 22 Cal., 434; A. & C. R. R. Co. v. Miller, 56 Ind., 80; Same v. City of Lawrenceburg, 56 Ind., 88; Reisner v. Strong, 24 Kas., 110; Schruder v. R. R. Co., 44 Mich., 387; National Docks R. Co. v. Central R. R. Co., 32 N. J. Eq., 755; R. R. Co. v. Newtown, 133 N. C., 132; Farnham v. D. & H. Canal Co., 61 Pa. St. 265; Pearcy v. Calais R'y Co., 30 Me., 498; Mountain Park Term. R. Co. v. Field (Ark.), 88 S. W. Rep., 897; Oregon S. L. R. Co. v. Postal, etc., Co., 111 Fed. Rep., 842).

4. The evidence introduced, even if competent to be considered here, does not affect the validity of the incorporation. (Cook on Corporations, vol. 1, secs. 10, 30.)

5. The proof does not show that the Louisville Gas Company has acquired all the stock of the Calor Oil and Gas Company.

6. The acquisition by the Louisville Company of all the stock of the Calor Oil and Gas Company would not terminate the corporate existence of the latter company; and that question can not be inquired into here. [a] (Louisville Gas Co. v. Kaufman & Straus, 105 Ky., 158; Parker v. Bethel Hotel Co., 91 Tenn., 252; 34 S. W. 209; 31 L. R. A., 711).

7. The appellant can not be denied the right to condemn this land because its principal stockholder has no such right. (1 Cook on Corporations, 1; Louisville Gas Company v. Kaufman & Straus, 105 Ky., 158; McTighe v. Macon Construction Co., 94 Ga. 306; 21 S. E., 701, 33 L. R. A., 801; Postal Tel. Cable Co. of Utah v. O. S. L. R. Co., 23 Utah, 474, 65 Pac. Rep, 735; U. P. R. Co v. C. P. T. C. Co., 30 Colo., 133, 69 Pac. Rep., 564; O. S. L. R. Co. v. P. T. C. Co., 111 Fed. Rep., 842; National Docks R. R. Co. v. Central R. R. Co., 33 N. J. Eq., 755; 2 Cook on Corporations, 634; Anthony v. American Glucose Co., 146 N. Y., 407; 1 Cook on Corporations, 6.)

This land is condemned for a public use. (1 Lewis on Eminent Domain, sec. 173; Johnston's Appeal, 115 Pa: St. 129, 7 Atl. Rep., 167; Opinion of the Justices In re Public Lighting Co., 150 Mass. 592, 24 N. E. Rep., 1084; State v. City of Toledo, 48 Ohio St., 112; Bloomfield, etc., Co. v. Richardson, 63 Barb., 437).

9. The court erred in permitting witnesses to base their estimates of compensation or damages to Franzell upon his supposed loss on rentals under his lease to the Kentucky Heating Co., and should have instructed the jury that said lease was void so far as it undertook to grant to that company the exclusive right to lay pipe lines upon the land in question. (Lewis on Eminent Domain, vol. 1, sec. 137, vol. 2, sec. 289a; West Virginia Trans-

portation Co. v. Ohio River Pipe Line Co., 22 W. Va., 626, 46 Am. Rep., 527; W. U. T. Co. v. A. U. T. Co., 65 Ga. 163, 38 Am. Rep., 781; Kettle River R. Co. v. Eastern R. Co., 41 Minn. 461, 6 L. R. A., 111; W. U. T. Co. v. B. & S. W. R. Co., 11 Fed. Rep., 1; W. U. T. Co. v. B. & O. T. Co., 23 Fed. Rep., 12; B. & O. T. Co. v. W. U. T. Co., 24 Fed. Rep., 319; W. U. T. Co. v. C. & P. R. Co., 86 Ill. 246, 29 Am. Rep., 29; W. U. T. Co. v. B. & O. T. Co., 19 Fed. Rep., 660; 2 Lewis on Eminent Domain, secs. 484, 483, 480; Mayhaffy v. R. R. Co., 163 Pa. St., 158; Kingsland v. N. Y., 110 N. Y., 569; Ranlet v. R. Co., 66 N. H., 561; Burt v. Merchants Ins. Co., 115 Mass., 1; Clemons v. Medows, 94 S. W. Rep., 13). ·

10. No interest of the Kentucky Heating Company in this land will be taken or damaged by the building of this pipe line, and it is entitled neither to contest the right to condemn nor to ask for damages. (W. U. T. Co. v. A. U. T. Co., 65 Ga., 160; Kettle River R. Co. v. Eastern R. Co., 41 Minn. 461, 6 L. R. A., 111.)

11. It was not competent for appellees to prove what the right to cross this land would be worth to appellant. (W. Va., etc., R. Co. v. Gibson, etc., 94 Ky., 234; 2 Lewis on Eminent Domain, 478, 15 Cyc., 757; T. & N. O. R. Co. v. P. T. C. Co., 52 S. W. Rep., 108; DeBreal v. F. & M. R. Co., 11 Ill., 501; P. & W. R. Co. v. City of Worcester, 155 Mass., 35; V. & T. R. Co. v. Elliott, 5 Nev., 358; Sullivan v. Lafayette Co., 61 Miss., 271; Union Depot, etc., v. Brunswick, 31 Minn., 297; S. A. & A. R. Co. v. S. W. T. & T. Co., 56 S. W. Rep., 201; St. L. K. & N. W. R. Co. v. The Knapp-Stout Co., 160 Mo., 396; S. R. & D. R. Co. v. Keith, 53 Ga., 178; Santiago Land, etc., Co. v. Neale, 88 Cal., 50; Coal Co. v. R. R. Co., 187 Pa. St. 145; Moulton v. Newburyport Water Co., 137 Mass., 163; In re Gettysburg Park, 101 Fed. Rep., 66). ,

12. The evidence as to the adaptability of this land for pipe line purposes was incompetent, and the instruction of the court directing the jury to consider that in assessing the compensation was erroneous.

13. The statement of Donald McDonald that with two gas companies drawing on the field it would soon be exhausted and that Franzell would thereby lose his rentals was incompetent.

14. The verdict is excessive and flagrantly against the evidence. (15 Cyc., 713; 2 Lewis on Eminent Domain, 500; Moale v. Mayor, etc., 5 Md. 314, 61 Am. Dec., 276; Matter of Albany Street, 11 Wend. 149, 25 Am. Dec., 618).

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

These two appeals grow out of the same transactions. Both the plaintiff and the defendants below appealed from the judgment of the circuit court, and filed copies of the record here. These, by order of this court, were heard together, and will be treated in this opinion as one case. Nicholas Franzell and wife own a farm in Meade county, Ky., between the natural gas fields and the city of Louisville. The Kentucky Heating Company is a corporation owning and operating natural gas wells in Meade county, and is engaged in the business of piping the gas from the wells to the city of Louisville and there selling it to its customers under a franchise which it owns and holds to lay its pipes through the public streets. The Louisville Gas Company is a corporation engaged in the business of manufacturing gas in the city of Louisville and selling it both for lighting and heating purposes under a franchise which it owns of laying its pipes through the public ways of the city of Louisville. This latter corporation is not a party to this record, but it is a rival, to some extent at least, of the Kentucky Heating Company, and it is the theory of the Heating Company that the Calor Oil & Gas Company is but a branch of the Louisville Gas Company, and that the latter was incorporated, among other things, to enable the Louisville Gas Company by indirection to pipe natural gas from the gas fields of Meade county to the city of Louisville, and in this way unlawfully compete with the Kentucky Heating Company in its business. We shall not enter very deeply into this phase of the case, for reasons which will appear farther on in the opinion. The Calor

Oil & Gas Company is a corporation having power and authority under its charter to buy and lease oil and gas lands, dig wells, construct pipe lines, and do any and all other things connected with such business. The questions which arise for adjudication upon the transcripts before us grow out of an attempt on the part of the last named company to condemn a strip of land across the farm of appellants Franzell and wife, for the purpose of laying therein a pipe line to convey natural gas from its wells in Meade county, Ky., to the city of Louisville. The proceeding is under section 3766a, Ky. St. 1903, and sections 835-840, Ky. St. 1903. The statement which was filed in the clerk's office of the county court of Meade county fully described the strip to be condemned, and thereupon the judge of the Meade county court appointed three commissioners who, after having duly qualified as required by law, viewed the land, and made report, assessing the damages which would accrue to the owners by reason of the condemnation thereof. Upon the trial of the case before the county court on the exceptions of the owners of the land to the report of the commissioners the court held that the corporation did not have the power of eminent domain, and dismissed the proceedings. From this judgment the corporation appealed to the circuit court of Meade county, where, upon a trial de novo, as provided by statute, the circuit court held that the corporation did possess the right of eminent domain, and submitted the question of damages to the jury, with the result that they returned a verdict of $4,000 in favor of Franzell and wife; and from this judgment all the parties, as said before, have prosecuted appeals for its reversal.

The first question which is raised by the defendants below on this appeal is that, after the judgment

in the circuit court that the Calor Oil & Gas Company possessed the right of eminent domain under its charter, the case should have been sent back to the county court and there tried out before a jury on the question of the amount of damages. We cannot agree to this proposition. When the county court decided that the corporation did not posess the right of eminent domain, it was forced to appeal to the circuit court to get from under the ban of that adverse adjudication, and, having appealed to the circuit court, under the statute (section 839, Ky. St. 1903) the case came on for trial de novo, and the whole controversy was to be tried out there. This is what a trial de novo means; and there is nothing in the statute which indicates that the Legislature intended to impose upon the parties the burden of the case being sent back to the county court for a retrial after an appeal to the circuit court. On the contrary, all the language of the section (839) indicates an intention that, upon appeal to the circuit court, the whole case is to be there tried and settled, subject, of course, to a right of appeal to this court.

The Kentucky Heating Company was made a party defendant to the condemnation proceedings, because it claimed under a written contract with Franzell and wife, the owners of the land, the "exclusive right and privilege of laying pipe and pipe lines for any and all purposes, whatsoever on, across, in, or upon said land;" the consideration of which was an annual rental of $262 so long as the Kentucky Heating Company "shall continue to occupy and use any part of the above-described land under this agreement." In addition to this exclusive privilege it had, under this contract, certain mineral rights in the land, which need not be set forth here, as the proposed right of

way sought by the Calor Oil & Gas Company in no wise infringed upon or involved them. So for, then, as the Kentucky Heating Company is concerned, the only question in this case in which it is interested is the validity of its claim to an exclusive right to construct or operate a pipe line across the Franzell farm. Obviously this contract is void as being in contravention of public policy. This position needs little elucidation or argument. Undoubtedly the public welfare requires the freest competition in all things pertaining to the common interest; and it has always been contrary to law to establish a monopoly such as is involved in the contract between the Franzells and the Kentucky Heating Company. What would be thought, for instance, of the proposition that a railroad corporation could lease from the owners a belt of land surrounding a municipality, and provide in the lease that it should have the exclusive right to operate a railroad across the land in question? And yet the supposed proposition differs in principle in no wise from the contract between the Kentucky Heating Company and the Franzells. In 1 Lewis on Eminent Domain, section 137, it is said: "An exclusive franchise or privilege in a matter of public concern can be created only by the sovereign power. It cannot be secured by the contract with individuals or corporations. Thus the grant by a railroad company of the exclusive right of maintaining a telegraph line along its right of way, or the grant by an individual of the exclusive right of constructing pipe lines over his lands for the transportation of oil, is void as against public policy." And again, in volume 2, section 289a, it is said: "It is held that the grant of an exclusive right of way for a use of a public nature, such as a railroad, or pipe line, or telegraph, is against

public policy and void, so far at least as the exclusive feature is concerned." To the same effect is West Virginia Transportation Co. v. Ohio River Pipe Line Co., 22 W. Va. 626, 46 Am. Rep. 527; Kettle River R. Co. v. Eastern R. Co., 41 Minn. 461, 43 N. W. 469, 6 L. R. A. 111; W. U. T. Co. v. A. U. T. Co., 65 Ga. 160, 38 Am. Rep. 781; Western Union Telegraph Co. v. B. & S. W .Ry. Co. (C. C.) 11 Fed. 1; W. U. T. Co. v. B. & O. Tel. Co. (C. C.) 23 Fed. 12. From the foregoing authorities, and upon principle, it is manifest that the lease from the Franzells to the heating company is void so far as it undertakes to grant an exclusive right to lay pipe lines in or across the land involved here. Being void, it can constitute the basis for no claim for compensation either upon the part of the Franzells or the heating company, as a void contract can give rise to no legal right. In 2 Lewis on Eminent Domain, section 484, it is said: "Nothing can be allowed on account of the loss or impairment of a gratutious privilege, which the owner has been enjoying by the sufferance of another, or contrary to law or public right." See, also Kingsland v. New York, 110 N. Y. 569; 18 N. E. 435; Ranlet v. Railroad Co., 62 N. H. 561. It follows that the Kentucky Heating Company had no interest whatever in this condemnation proceeding, it being patent that the rights which the Calor Oil & Gas Company were seeking did not in any wise militate against or infringe upon the mineral rights of the Heating Company in the Franzell farm; and, as we have already said, it had no right whatever to the exclusive privilege of laying pipe lines across the farm. The commissioners and the jury correctly refused to award it any damages by reason of the condemnation of the right of way, and the court erred in permitting any evidence as

to the damages that would accrue to the Franzells by reason of the loss of rental under their contract with the Kentucky Heating Company, based upon the abandonment by the heating company of the lease.

The appellee, both by traverse and affirmative allegation, placed in issue the existence of the Calor Oil & Gas Company. When the corporation introduced in evidence a properly certified copy of its charter, which was regular on its face, and showed a compliance on its part with the statutory requirements, this evidence established its existence. Section 540 of the Kentucky Statutes provides: "Said articles, or a certified copy thereof, may be used as evidence in any action for or against such corporation." And in section 542 it is provided: "When the articles are filed and recorded as provided, * * * the corporation shall be deemed to be organized for the purpose of transacting, promoting or carrying on the business or purpose for which it was created; and shall thereupon become a body corporate." When the corporation is organized as the statute requires, neither its purpose nor its validity can be inquired into collaterally, and any proceeding which challenges its right to exist must be instituted and maintained by the government, under whose laws it is organized. It would produce manifest confusion and hardship if the right of a corporation to exist could be called in question by every litigant with whom it came in contact during its business career, and therefore the principle is wisely established that after a corporation is organized as by law required no adverse litigant can, in a collateral proceeding, challenge its right to exist. In the case of Cumberland Telephone & Telegraph Co. v. Louisville Home Telephone Co., 114 Ky. 892, 24 Ky. Law Rep. 1676, 72 S. W. 4, on this very question we said: "Ap-

pellee has not only been incorporated in the State of
Delaware, but it has been recognized by the authorities
of the city of Louisville as a corporation, and has been
granted by it an important and valuable franchise. It
is at least a de facto corporation, and the rule seems
to be that, when an association of persons is exercis-
ing corporate franchises under color of legal organi-
zation, the existence of the corporation cannot be in-
quired into collaterally, but only in a direct proceed-
ing by the government. The reason of the rule is that
it would produce endless confusion and destroy the
corporation if the legality of its existence could be
drawn in question in every suit in which it was a
party, for then no judgment could be rendered which
would finally settle the question." The same principle
is enunciated in Turnpike Co. v. Bobb, 88 Ky. 226,
10 S. W. 791, 10 Ky. Law Rep. 796; 1 Lawson on
Rights, Remedies, and Practice, section 370; Wright
v. Shelby R. Co., 16 B. Mon. 5, 63 Am. Dec. 522; Laflin
& Rand Power Co. v. Sinsheimer, 46 Md. 415, 24 Am.
Rep. 522; Central of Georgia R. Co. v. U. S. & N. R.
Co., 144 Ala. 639, 39 South. 473, 2 L. R. A. (N. S.)
144; Postal Tel. Cable Co. v. O. S. L. R. Co., 23 Utah,
474, 65 Pac. 735, 9 Am. St. Rep. 705; Parker v. Bethel
Hotel Co., 96 Tenn. 252, 34 S. W. 209, 31 L. R. A.
706. It follows from what we have said above, and
from the foregoing authorities, that the trial court
should not have permitted any inquiry into the motives
or bona fides of the gas company in this proceeding,
and a fortiori should have excluded all attempt to
bring into question whether the venture of the gas
company in piping natural gas from Meade county to
Louisville would or not be profitable. With that the
Franzells had nothing to do, nor did the Kentucky
Heating Company, because, as above shown, the lat-

ter had no legal interest in the property that was involved in the condemnation proceedings. The right of the gas company to pipe the natural gas from its own wells in Meade county and transport it to Louisville for sale was a legitimate exercise of its property right, and this the Kentucky Heating Company could not successfully challenge, although it may be detrimental to its interest. If it be true, as said in the briefs, that the natural gas in the district of Meade county is contained in a common reservoir underlying the whole area, of necessity it follows that the gas company's use of its wells tends to exhaust the wells of the heating company; and it is equally true that the piping of gas by the heating company from its wells tends to exhaust the gas company's wells; and undoubtedly the operation of two gas companies in the same field (assuming that the quantity of gas is limited) will exhaust it sooner than one of them would. But each has the legal right to the legitimate use of the gas underlying its own property, and neither can complain of such use by the other. We have already held, in the cases of Commonwealth v. Trent, etc., 117 Ky. 34, 25 Ky. Law Rep. 1180, 77 S. W. 390, and Calor Oil & Gas Co. v. McGehee, 117 Ky. 71, 25 Ky. Law Rep. 1221, 77 S. W. 368, that one who illegitimately wastes or destroys the gas of a district may be punished under the criminal statutes of the State, and may also be enjoined from committing such wrongful acts; but all parties owning gas wells in the districts are free to make any legitimate use of the gas they choose, and the fact that this legitimate use tends to exhaust the supply gives the other owners of gas wells in the district no just ground of complaint. The court knows, as a part of the history of the country, that natural gas districts after flourishing for a while are

frequently entirely exhausted, and that manufacturing and power plants established in the district, and dependent upon the use of the gas for fuel, are forced to move elsewhere. This may happen to the district under consideration; but, as said before, if this results from legitimate sales by the various owners to their customers, no one of them has a just ground of complaint. They have all enjoyed the property while it existed, and when it is exhausted they, of course, can no longer enjoy it. The right of the Calor Oil & Gas Company to transport its gas to Louisville and sell it is as high as the right of the Kentucky Heating Company, and neither has a monopoly of the field.

The real issue in this case was much obscured by a consideration of the effect upon the heating company of the gas company's piping its gas to Louisville—a question which had no valid place in the procedure. If the gas company makes an illegitimate use of its wells or pipe line, and unlawfully attempts to destroy the gas fields by unnecessarily or fraudulently wasting the gas, the Kentucky Heating Company, as a joint owner in the common field, will have a remedy both by injunction and by an action for damages, and undoubtedly the doers of the wrong will be subject to the penalty provided in the criminal statutes forbidding the wrong. But these are considerations which should not have been superimposed upon the simple issues as to (1) whether or not the Calor Oil & Gas Company had under its charter the right of eminent domain, and (2) what damage accrued to Franzell and wife by reason of its exercise in the manner sought in this case. The question of the constitutionality of section 3766a of the Kentucky Statutes of 1903, which gives the right of eminent domain to the owners of gas and oil wells for the purpose of piping their products to

market, is not now an open one. The constitutionality of the act was recognized in the case of Paine's Guardian, etc., v. Calor Oil & Gas Co., 103 S. W. 309, 31 Ky. Law Rep. 754, 11 L. R. A. (N. S.) 727, and is clearly established by the reasoning of the opinions in Chesapeake Stone Co. v. Moreland (Ky.) 126 Ky. 656, 104 S. W. 762, and Kirk-Christy Co. v. American Ass'n Inc. (decided March 4, 1908) 108 S. W. 232, 128 Ky. 668. The fact that the Louisville Gas Company owns a majority, or even all, of the stock of the Calor Oil & Gas Company does not vacate or destroy the charter or corporate rights of the latter corporation. The Calor Oil & Gas Company retains its separate corporate entity, and has all the powers and rights which it would otherwise have if its stock was in the hands of a number of individual holders. Louisville Gas Co. v. Kaufman & Straus, 105 Ky. 158, 20 Ky. Law Rep. 1069, 48 S. W. 434; City of Louisville v. Louisville Water Co., 81 S. W. 698, 1 L. R. A. (N. S.) 766, 26 Ky. Law Rep. 425; Bell, Sheriff v. City of Louisville, etc. (decided January 21, 1908) 106 S. W. 862; Parker v. Bethel Hotel Co., 96 Tenn. 252, 34 S. W. 209, 31 L. R. A. 706; McTighe v. Macon Construction Co., 94 Ga. 306, 21 S. E. 701, 32 L. R. A. 208, 47 Am. St. Rep. 153. It follows, from what we have said, that the purpose of the Louisville Gas Company in purchasing the stock of the Calor Oil & Gas Company cannot be inquired into in this collateral proceeding, and that it is immaterial here whether or not it is seeking to evade the provisions of section 190 of the Constitution, which requires pre-existing corporations to accept the provisions of the Constitution before they shall enjoy the benefits of future legislation. If either the Louisville Gas Company or the Calor Oil & Gas Company is violating its charter, that question

may not be inquired into in a collateral proceeding, but, as said before, can only be challenged in a direct proceeding instituted by the Commonwealth through its proper officers. It is also immaterial in this proceeding whether or not the Calor Oil & Gas Company has obtained from the city of Louisville a franchise to distribute its gas to the public through its streets. It cannot obtain its whole right of way at once. Some part of the proceeding must have priority in point of time. It is possible, of course, that the city may not grant the franchise at all, or the price for it may be so high that the venture will have to be abandoned. But this does not affect the Franzells, who, if this happens, will have their money for the right of way over their land without the burden of a pipe line upon it. Nor is it material that appellant purposes to sell all of its gas to the Louisville Gas Company, and in this way distribute it to the citizens of Louisville. The statute gives the appellant the right to condemn a pipe line from its wells to the market for its produce. It contains no restrictions upon the manner of sale; it evidently being the belief of the Legislature that the public interest will be best subserved by affording the owner of the gas an opportunity to sell it upon the market.

This brings us to the question of the excessiveness of the verdict. The laying of the pipe line on the strip of land in question will be an additional servitude upon the right of way of the Louisville, Henderson & St. Louis Railroad Company, which runs through the Franzell farm. The railroad owns a perpetual and exclusive right of way through the farm, and the strip of ground in question here is within this easement, and is 1,450 feet long and 27 feet wide. In this strip a pipe line 10 inches in diameter is to be buried, and

for this privilege the jury returned a verdict of $4,000 in damages. It cannot be claimed that the laying of the pipe line injures in any way or damages the remainder of the farm. The railroad, as said before, has a perpetual and exclusive franchise of the whole strip for railroad purposes. The pipe is to be sunk along the railroad track. The commissioners appointed to assess the damages in their report fixed the damages at $21.75. The whole farm, it is said, is assessed for taxation at $2,000; and yet a jury assessed the damages for taking the strip, of which the owner of the fee, leaving out of view the bare possibility of a reverter, can never make any use, at $4,000. This verdict is flagrantly excessive and out of all proportion to the real damages sustained. The question was not what the property was worth to the Calor Oil & Gas Company as a pipe line, and no consideration of its availability for this purpose should have been allowed to enter in the problem. In the case of West Virginia, etc. R. Co. v. Gibson, etc., 94 Ky. 234, 21 S. W. 1055, 15 Ky. Law Rep. 7, which was a condemnation proceeding on the part of the railroad, in establishing the measure of damage the court said: "The issue in such a case is not what the land is worth to the appellant, nor how profitably it may use it in its business, nor the cost and expense that it would be compelled to incur in obtaining other property or fitting it for its business if it failed to obtain that particular property. See Lewis on Eminent Domain, section 479, and authorities cited. The law should be given to the jury without including the evidential matters indicated. They are evidence only. But in such cases the jury should be admonished not to let those matters indicated as not evidence influence them." In the case of Texas & N. O. R. Co. v. Postal

Tel. Cable Co. (Tex. Civ. App.) 52 S. W. 108, the
Supreme Court of Texas, in speaking of the condem-
nation of the right to put telegraph poles on the rail-
road right of way, said: "Under no conceivable state
of facts could the value of the use of the right of
way to appellee (the telegraph company) be made the
measure by which to determine the damages sustained
by appellant." To the same effect is V. & T. R. Co.
v. Elliott, 5 Nev. 358; Sullivan v. Lafayette County,
61 Miss. 271; Union Depot, etc., Co. v. Brunswick, 31
Minn. 297, 17 N. W. 626, 47 Am. Rep. 789. The case of
Madisonville, Hartford & Eastern R. R. Co. v. Ross, 126
Ky. 656, 103 S. W. 330, 31 Ky. Law Rep. 584, involved
the condemnation of appellee's home for railroad pur-
poses, and we there held that his measure of damages
was the market value of the property taken, and that
the inconvenience to the owner of moving or finding
another home could not be allowed as an element of
damages. On the subject of the measure of damages
we said: "Lewis, in his work on Eminent Domain
(2d Ed.) section 463, thus states the rule for the meas-
ure of damages when the entire tract is taken: "This
case presents but little difficulty, and, so far as we
have observed, there is no difference in the authorities
as to the proper measure of damages. A fair equiv-
alent for any entire piece of property is its market
value in money.' In section 478 it is said: 'In esti-
mating the value of property taken for public use it
is the market value of the property which is to be
considered. The market value of property is the price
which it will bring when it is offered for sale by one
who desires, but is not obliged to sell it, and is bought
by one who is under no necessity of having it.' In 15
Cyc. p. 685, the rule is thus stated: 'The measure of
damages when the whole of any particular piece of

property is taken for a public use under the power of eminent domain is the market value of it. Market value means the fair value as between one who wants to purchase and one who wants to sell, not what could be obtained for it under peculiar circumstances when a greater than its fair price could be obtained, nor its speculative value, nor a value obtained from the necessity of another, its present value at a sale which a prudent owner would make if he had the power of election as to the time and terms. * * *' 10 Am. & Eng. Ency. of Law (2d Ed.) p. 1151, on the subject in hand, says: In determining the compensation to be paid to the landowner for land taken under the power of eminent domain, there are many elements that must be considered. The principal rule, which is to be applied as far as possible, is that, whenever property is taken, the fair market value of the property at the time of the taking should be paid for it. The market value of land is usually declared to be not what the land would bring at a forced sale, but what it would bring in the hands of a prudent seller, at liberty to fix the time and conditions of sale. What property would bring at a fair public sale where one party wanted to sell and another wanted to buy may be taken as a criterion of its market value.' " In the above case it is true the whole of appellee's property was taken, and in the case at bar only a strip of ground running across the farm is sought to be condemned. Ordinarily in the case of an easement, such as a railroad right of way, or the easement involved here, the incidental question arises as to the damages accruing to the remainder of the property. In the case at bar, however, that question is eliminated by the peculiar situation. As the railroad owns the exclusive right of way across the farm, and the appellant is seeking to

lay its pipe line along this easement, there can be no resulting damage to the remainder of the property of the Franzells.   This being true, what we said in the case last above cited is pertinent to the establishment of the proper measure of damages here.   We think the court should have told the jury substantially that the measure of damages for the taking of the strip of land in question was its fair market value; being that sum which the owner who desired to sell, but was not compelled so to do, would take for it in its present condition, and what a purchaser who desired to buy, but was not compelled to have it, would give for it under the circumstances.   What we have said in regard to the measure of damages in this case does not conflict with the principle enunciated in Boom Company v. Patterson, 98 U. S. 403, 25 L. Ed. 206.   In that case it was held that, where the property sought to be condemned had a peculiar adaptability and an increased market value because of its suitableness as sites for log booms, this adaptability was to be considered in ascertaining the market value of the property.   There is nothing in the case before us which affords grounds for the application of this principle.   The land sought to be condemned is on the direct route from the Meade county gas wells to Louisville; but there was no special reason for desiring it more than any other direct route between the wells and the city.

For the reasons indicated, the judgment is affirmed on the appeal of the Kentucky Heating Company, Nicholas Franzell and wife, and reversed on the appeal of the Calor Oil & Gas Company, for a new trial under principles consistent with this opinion.